United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR CREGGETT,<br><br>    Plaintiff(s),<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant(s).<br>_____/ | No. C-13-05642-DMR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Arthur Creggett ("Plaintiff") seeks review of his applications for disability insurance benefits and supplemental security income. Defendant Social Security Commissioner ("Defendant" or "Commissioner") denied his applications after determining that Plaintiff was not disabled under Title II or Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff now requests judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both parties filed motions for summary judgment. For the reasons stated below, the court **denies** Plaintiff's motion for summary judgment and **grants** Defendant's motion for summary judgment.

## I. Procedural History

In May 2010, Plaintiff applied for disability insurance benefits under Title II of the Act, and for supplemental security income under Title XVI of the Act, alleging disability beginning January 2007. A.R. 166, 198, 173. The agency denied Plaintiff's applications initially and subsequently

denied them again upon reconsideration. A.R. 21-36, 42-, 88, 96. On April 17, 2012, Administrative Law Judge (ALJ) Caroline Beers held a hearing at which Plaintiff and his attorney representative were present. A.R. 44-75. Plaintiff provided testimony, as did Thomas Linvill, a vocational expert. *Id.*

On May 23, 2012 the ALJ issued a written decision finding Plaintiff not disabled under Title II or XVI of the Social Security Act. A.R. 24-36. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision. A.R. 4-9. Plaintiff then filed this action.

## II. Factual Background

**A. Background**

The record contains the following information. Plaintiff was born in August 1968 and was 39 years old as of the alleged onset date of his disability. A.R. 166. Plaintiff had a tenth grade education, as well as additional training with the Job Corps, although he did not finish his Job Corps program. A.R. 48. Plaintiff's schooling from kindergarten to the tenth grade was in special education classes. A.R. 64. During elementary school, Plaintiff received mental testing, which revealed that Plaintiff was "not up-to-date mentally with all of the other kids." A.R. 64.

From 2005 to 2006, Plaintiff held a job in a warehouse loading materials onto a truck, which required him to lift and carry up to 50 pounds. A.R. 48. Plaintiff left that position because he started experiencing numbness on the left side of his body. A.R. 49. Prior to the warehouse position, Plaintiff had done food preparation, cleaning, and management for McDonald's for approximately three years. A.R. 49. Plaintiff began that position as a regular employee but was promoted to management trainee, which required him to be on the floor of the restaurant "delegating to the other employees what needed to be done." A.R. 49-50. Prior to the fast food position, Plaintiff worked for U-Haul as an outside worker for about two years, which required Plaintiff to move and check trucks and equipment. A.R. 51, 200. After Plaintiff suffered an unspecified workplace injury, Plaintiff's duties shifted to inputting information into a computer, although Plaintiff was "working next to someone who was actually doing the job" because Plaintiff was coming off of worker's compensation and could not use his hand. A.R. 51, 63-64. Plaintiff worked

at the counter at U-Haul for about a year. A.R. 65. From 2001 to 2002, Plaintiff worked as a groomer for Southwest Airlines, which entailed cleaning airplanes to prepare them for flight. A.R. 51, 200. The groomer position required Plaintiff to lift and carry a maximum of 50 pounds. A.R. 51.

Plaintiff testified that he was no longer able to work because of his pain and nerve damage. Plaintiff experienced pain and numbness in his left side that felt "like a hot poker inside your flesh," which left Plaintiff unable to function. A.R. 54. Plaintiff testified that he could not lift 10 pounds frequently and 20 pounds occasionally because it would cause "excruciating" pain in his neck that would prevent him from tilting or turning his neck. A.R.54. Plaintiff stated that even lifting or carrying no more than 10 pounds would be difficult, since "[i]f it's heavy enough to make my arm flex, then I'm going to have a problem with the nerve damage kicking in." A.R. 62. Plaintiff could sit and stand for five to ten minutes each before having to change his position. A.R. 58. After sitting for five or ten minutes, Plaintiff's back, leg, arm, and neck would begin to bother him. A.R. 60. Plaintiff testified that he was able to walk only a quarter of a block before starting to feel numbness in his left leg, toes, and fingers. A.R. 60-61. Plaintiff typically used a cane every day when walking outside of his apartment, although he testified that he had forgotten the cane on the day of the hearing. A.R. 61. Plaintiff reported that he was 5'8" and weighed 240 pounds. A.R. 198.

Plaintiff took amitriptyline for his mental health issues, and Vicodin, Soma, and Carisoprodol for his pain. A.R. 54, 58. Plaintiff noted that he had "self-medicated" his pain with marijuana, though once he received treatment and medicine for pain, he stopped using marijuana. A.R. 56-57. The ALJ noted that there were references to drug-seeking behavior in the medical record. Plaintiff explained that he had taken his doctor's prescriptions to different pharmacies every month, but stopped doing so when he was told not to. A.R. 57.

The ALJ asked Plaintiff whether he had taken a trip to Mexico in 2011, and noted that a medical record had suggested that he had. A.R. 55, 502 (progress note dated April 8, 2011 from Tiburicio Vasquez Health Center stating "Pt's wife states they are going out of country to Mexico due to a death in the family (aunt). Consulted Dr. Veletto. OK for early refill (x Dr. Veletto).").

Plaintiff stated that he had no knowledge of that, that he had never been to Mexico, and did not own a passport. A.R. 56.

Plaintiff testified that he had a driver's license and drove once or twice a week to go to the store, run errands, or get to appointments. A.R. 47-48. Plaintiff's children assisted with household chores such as laundry and shopping. A.R. 62. Plaintiff stated that he did not go into grocery stores at all anymore, due to pain caused by walking the aisles or lifting items. A.R. 62.

In a function report dated July 29, 2010, Plaintiff stated that he was able to dress, bathe, shave, and use the toilet by himself, but that his condition slowed his performance of each of these acts. A.R. 206. Plaintiff prepared his own meals (of frozen dinners) and could do the laundry. A.R. 206-207. Plaintiff's function report also indicated that Plaintiff drove once a day by himself to buy beverages at a store. A.R. 208. Plaintiff was able to pay bills, count change, handle a savings account, and use a checkbook. A.R. 208. Plaintiff stated that he spent time talking with others every day. A.R. 209.

**B. Plaintiff's Relevant Medical History**

**1. Dr. Tony Veletto, M.D.**

The record contains a medical source statement dated September 17, 2010 from treating physician Dr. Veletto.[1] A.R. 378-381. The statement indicates that Plaintiff has lumbar disc disease with radiculopathy, cervical disc disease with radiculopathy, weakness in his left upper extremity and in both lower extremities, and tenderness in his neck and lower back. A.R. 378. Dr. Veletto also completed a check-off form in which he indicated that Plaintiff was incapable of even low stress jobs, could walk for half a city block before needing to rest, could sit, stand, or walk for only ten minutes at a time, and could sit, stand, and walk 0 minutes in an 8-hour workday. A.R. 379-380. Dr. Veletto also indicated that Plaintiff was required to walk every ten minutes for three to five minutes and would have to take unscheduled breaks every ten minutes in an 8-hour workday. A.R. 380. Plaintiff could never lift more than ten pounds, and could only lift ten pounds rarely. A.R. 380. Plaintiff could rarely look down or turn his head left and right, and could occasionally look up

---

[1] Dr. Veletto apparently treated Plaintiff, although neither Plaintiff's brief nor the medical record sets forth the dates and purpose of Dr. Veletto's treatment of Plaintiff.

or hold his head in a static position, but could never twist, stoop, crouch, climb ladders, or climb stairs. A.R. 380-381.

### 2. Dr. Rosemarie Ratto, Ph.D.

The record includes an evaluation dated September 23, 2010 from examining psychologist Dr. Ratto. A.R. 382-386. Plaintiff reported to Dr. Ratto that he experienced depression and anxiety and thoughts of suicide, as well as problems with concentration and memory. A.R. 383. Dr. Ratto noted that Plaintiff's mood was anxious and depressed. A.R. 383. Dr. Ratto noted that Plaintiff had no difficulty comprehending Dr. Ratto's evaluation, that his verbal response time and speech were adequate and his thoughts were adequately organized. A.R. 383. Dr. Ratto also found evidence of psychomotor retardation with difficulty adequately reproducing simple figures. A.R. 383. Dr. Ratto noted that Plaintiff's immediate, intermediate, and remote memories were adequate or fair. A.R. 383. Plaintiff's concentration and attention span appeared adequate, although Plaintiff was unable to count backward by sevens, was unable to spell the word "world" backward, and was able to follow a three part simple command only after the instructions were repeated. A.R. 383. Dr. Ratto found that Plaintiff had a full scale IQ of 59, falling within the "extremely low" range of functioning. A.R. 384. Dr. Ratto's intelligence tests also revealed that Plaintiff had "significant weakness" in his ability to concentrate and pay attention. A.R. 384.

Dr. Ratto's diagnostic impressions were that Plaintiff "is able to understand and carry out simple instructions" but "impairment in his abilities is noted, and a decline from higher functioning is likely." A.R. 384. Dr. Ratto noted that Plaintiff's memory was impaired and "adequate for only limited simple tasks." A.R. 384. Plaintiff was able to get along adequately with others, though some problems may exist. Plaintiff's ability to avoid simple hazards was adequate. A.R. 384. Finally, Dr. Ratto stated that "[c]onsidering his current problems, he will have difficulty with the stress of employment." A.R. 384.

### 3. Dr. Feng Bai, M.D.

The record includes an orthopedic evaluation dated November 10, 2010 from examining physician Dr. Bai. A.R. 402-409. Dr. Bai reviewed Plaintiff's medical records and noted the results of several MRIs and x-rays. An x-ray of Plaintiff's lumbar spine dated July 23, 2007 indicated

5

slight anterior spondylolisthesis of L4 on L5 with mild degenerative disc narrowing at this level, and degenerative change in the facet joint with sclerosis of the facet joint at L4-L5 and L5-S1. X-rays of Plaintiff's left hip and pelvis from the same dates indicated no significant hip or pelvic radiographic abnormalities. A.R. 402. An MRI of Plaintiff's lumbar spine dated October 4, 2007, indicated L3-L4 degenerative anterolisthesis of about 6 mm with mild central canal stenosis; bilateral L4 lateral recess stenosis; mild-to-moderate bilateral S1 neuroforaminal narrowing secondary to annular bulging, facet spur and hypertrophied ligamentum flavum; and L4-L5 annular bulging small central disc protrusion with mild central canal narrowing. Another MRI of Plaintiff's lumbar spine dated May 26, 2010 indicated moderate degenerative disc disease at L3-L4; broad-based disc herniation and facet hypertrophy; osteoarthropathy causing mild central canal stenosis; bilateral narrowing of lateral recess and moderate to severe left side neuroforaminal narrowing; at L2-L3 mild central canal stenosis secondary to degenerative disc disease and facet hypertrophy; and mild atrophy with paraspinal muscle at L2-L3 through L4-L5. A.R. 402.

Dr. Bai examined Plaintiff and found him to be well-developed, well-nourished, and in no acute distress. A.R. 405. Dr. Bai noted that Plaintiff sat comfortably without difficulty, and was able to go up and down the examining table and change position by himself without significant difficulty. A.R. 405. While kneeling on the examination table, Plaintiff used his hand to push himself to change position. A.R. 405. Plaintiff used a cane on his right hand while walking in the examining room, but was able to walk without the cane in the examining room with stable gait. A.R. 405. Plaintiff was able to do tiptoe and heel walking but reported increased low back pain. A.R. 405.

Dr. Bai found that Plaintiff had normal range of motion in his neck, and decreased range of motion in his back due to low back pain. A.R. 405-406. Otherwise Dr. Bai found that Plaintiff's back was normal. A.R. 406 ("There is a normal contour without evidence of scoliosis. There is no paraspinal muscle spasm. There are no scars. There is no pain with range of motion and no pain with axial rotation of the trunk. There is no pain with axial loading of the spine at the head."). Plaintiff's straight leg raising test was negative bilaterally in sitting and supine positions. A.R. 406.

Plaintiff had normal range of motion in bilateral upper and lower extremities, including his shoulders, elbows, wrists, fingers, hips, knees, and ankles. A.R. 406.

Dr. Bai's impression was that the physical examination "showed decreased range of motion of the lumbar spine" with Plaintiff reporting pain down the left lower extremity and "decreased sensation in the left upper and lower extremities in stocking distribution," but "[o]therwise, neurological examination was unremarkable." A.R. 408. Plaintiff had tenderness in his low back, and other symptoms consistent with lumbar spine degenerative disc disease and L3-L4 with grade 1 anterolisthesis and disc herniation, facet hypertrophy caused mild central canal stenosis, left bilateral recess narrowing, left moderate to severe neuroforaminal narrowing, and chronic low back pain with left radicular pain. A.R. 408.

Based on Dr. Bai's examination, Dr. Bai found that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand, walk, sit for six hours each of an eight-hour workday; and to do occasional climbing, stooping, kneeling, and crouching. However, Plaintiff could not push or pull other than consistent with the lifting and carrying limitations above, and had postural limitations due to his low back pain. A.R. 408. Plaintiff had no manipulative limitations for bilateral upper extremities to reach all directions doing gross or fine manipulations. A.R. 408. Dr. Bai also found that Plaintiff's gait was stable without the use of a cane, that Plaintiff had no neurological weakness in his leg, and "[f]rom an orthopedic point of view, there is no indication for use of the cane or other assistive device." A.R. 408. Plaintiff also did not have visual, communicative, or environmental limitations. A.R. 408.

### 4. Dr. Lucila, M.D.

The record includes a psychiatric review technique and a mental residual functional capacity assessment dated October 13, 2013 from non-examining physician Dr. Lucila. A.R. 388-402. Dr. Lucila considered Plaintiff's mental health conditions, including his thoughts of suicide and his anxiety disorder, and found that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, his ability to maintain attention and concentration for extended periods, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods, but was otherwise not significantly limited in any functional capacity. A.R. 388-401. Dr. Lucila found Plaintiff to have mild restrictions on his activities of daily living and his ability to maintain social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and insufficient evidence of any repeated episodes of decompensation, each of extended duration. A.R. 396.

### 5. Dr. Charles Combs, M.D.

The record includes a physical residual functional capacity assessment dated January 3, 2011 from non-examining physician Dr. Combs. A.R. 415-422. Dr. Combs reviewed the medical evidence of record and Plaintiff's reported activities of daily living and found that those sources showed that Plaintiff had lumber degenerative disc disease with chronic lower back pain. A.R. 422. Dr. Combs also assessed Plaintiff's exertional limitations, and found that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand, walk, sit for six hours each of an eight-hour workday; and to do occasional stair/ramp climbing, balancing, stooping, kneeling, crouching, and crawling (except that Plaintiff could never climb ladders/ropes/scaffolds); and to push or pull consistent with the lifting and carrying limitations above. Dr. Combs found no manipulative, visual, communicative, or environmental limitations, except that Plaintiff should avoid concentrated exposure to hazards such as machinery or heights. A.R. 416-419.

### III. The Five-Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater,* 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled. To evaluate disabilities based on mental illness, the agency considers documentation of medically determined impairments, the degree of limitations such impairments cause in the applicant's ability to work, and whether the limitations have lasted or can be expected to last for at least twelve months. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A. Mental impairments may be evaluated under any one of nine separate categories. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.01. If the ALJ finds the presence of the symptoms enumerated in one of those categories, the ALJ must consider whether the claimant's mental impairments meet at least two of the four so-called "B criteria"[3] or the "C criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06; *see also* 20 C.F.R. § 1520a; 20 C.F.R. § 416.920(a)(4)(iii).

---

[3] "B criteria" refer to certain functional limitations that a claimant must demonstrate in order to show that her impairment meets or equals one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B); § 12.06(B); 20 C.F.R. §§ 404.1520, 416.920. They are (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett,* 180 F.3d at 1098-99.

## IV.  The May 23, 2012 Decision By The ALJ

In the May 23, 2012 decision, the ALJ applied the five-step sequential evaluation to determine whether Plaintiff was disabled. A.R. 24-36. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2007. A.R. 26. At Step Two, the ALJ found that the evidence established that Plaintiff had the following severe impairments: lumbar and cervical disc disease with radiculopathy; borderline intellectual functioning; depression; and anxiety. A.R. 26. At Step Three, the ALJ found that Plaintiff's impairment did not meet or equal a presumptively disabling impairment in the Listings. A.R. 27. With respect to the "B" criteria for Plaintiff's mental impairments, the ALJ found that Plaintiff had a mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence and pace, and had experienced no episodes of decompensation. A.R. 28-29.

At Step Four, the ALJ found that Plaintiff was "unable to perform any past relevant work." A.R. 35. The ALJ then determined that Plaintiff had the "residual functional capacity to perform light work . . . except [Plaintiff] could lift and carry ten pounds frequently and 20 pounds occasionally; could stand and/or walk for six hours during an eight-hour workday; could sit for six hours during an eight-hour workday; could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, crawl; could not climb ladders; should avoid hazards such as working around unprotected heights and heavy moving machinery; can perform simple tasks that are consistent with

SVP 2 entry level work, as defined by the Dictionary of Occupational Titles ['DOT']; can make simple work related decisions; and can operate with occasional workplace changes." A.R. 30. At Step Five, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC, including cashier II, housekeeper, small products assembler, addresser, document preparer, and loader of semiconductor dyes. A.R. 35-36.

## V. Standard of Review

The ALJ's underlying determination "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted). "Substantial evidence" is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id*. If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, resolving ambiguities, and drawing inferences logically flowing from the evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982); *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## VI. Discussion

Plaintiff argues that the ALJ erred when he found that Plaintiff was not fully credible in describing the severity of his subjective pain testimony in light of Plaintiff's activities of daily living. Plaintiff also contends that the ALJ erred by determining Plaintiff's RFC based on an alleged misinterpretation of the opinion of Dr. Ratto. Finally, Plaintiff also contends that the ALJ erred by finding that there were jobs in the national economy that Plaintiff could perform, because the

11

occupations noted by the ALJ all required higher functioning than Plaintiff's limited capabilities allowed.

**A. Credibility of Plaintiff's Subjective Pain Testimony**

Plaintiff argues that the ALJ improperly discounted his testimony regarding subjective pain, and challenges the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. A.R. 33. The court will examine this finding to determine whether it was supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 950 (9th Cir. 2002) (the court may not second-guess the ALJ's credibility finding if it is supported by substantial evidence in the record).

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). First, "the claimant must produce objective medical evidence of underlying 'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably be expected to produce pain or other symptoms.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281-82). The *Smolen* court further elaborated on this requirement:

> The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment could reasonably be expected to produce pain or another symptom, [this step] requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon . . . . This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms.

*Smolen*, 80 F.3d at 1282 (citations omitted). The ALJ found that Plaintiff had satisfied this first step of the analysis. A.R. 23.

If the first step is satisfied, then the ALJ may consider whether the claimant's statements about the intensity, persistence, and limiting effects of those symptoms are credible and consistent with objective medical evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); 20 C.F.R. § 416.929(c). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quotations omitted). The ALJ must support a finding that the claimant's subjective testimony

Case 4:13-cv-05642-DMR Document 21 Filed 03/18/15 Page 13 of 19

is not reliable with specific, clear and convincing evidence from the record. *Thomas*, 278 F.3d at 958-59. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The ALJ gave several reasons for discounting Plaintiff's subjective pain testimony, including that Plaintiff described activities of daily living that were "not as limited as one would expect considering the complaints of disabling symptoms." A.R. 33. This is a proper basis for discounting Plaintiff's testimony because a claimant's daily activities may be considered by the ALJ when determining the credibility of the claimant's subjective pain testimony. *Smolen*, 80 F.3d at 1284; *Fair v. Bowen*, 885 F.2d 579, 603 (9th Cir. 1989) (if a claimant can perform household chores and other activities that involve similar physical tasks as a job, an ALJ may conclude that the claimant's pain does not prevent him from working). The ALJ noted that Plaintiff "drives, handles money, watches television, manages his own finances, and prepares his own meals. The undersigned notes that driving inherently involves constant and complex coordination." A.R. 33. The ALJ also noted that the "record reflects that the claimant may have traveled to Mexico because of a death in the family." A.R. 33. The ALJ noted that "[t]his would appear to contradict the claimant's testimony. Although long distance travel and disability are not necessarily mutually exclusive, the claimant's decision to travel to Mexico tends to further suggest that the alleged symptoms and limitations may have been overstated." A.R. 33-34. The ALJ also found that Plaintiff "testified that he drives 1-2 times a week to go to the store and appointments, gives self-massage when standing, and takes pain medications that take the pain away most of the time and do not have side effects." A.R. 34.

In response to the ALJ's findings, Plaintiff argues that the record only reflects that Plaintiff could prepare microwaveable frozen dinners, not cook; that Plaintiff denied having traveled to Mexico; that Plaintiff did not drive often; and that Plaintiff could groom himself but only at a slower pace. Pl.'s Mot. at 20. However, Plaintiff's attempt to offer a different interpretation of the record misses the point: substantial evidence in the record supports the ALJ's interpretation, as well as the ALJ's finding that Plaintiff's reported activities of daily living were inconsistent with his claimed

1  level of disability, and thus the ALJ did not err when discounting Plaintiff's credibility for that
2  reason.
3    Plaintiff's motion only takes issue with the ALJ's reliance on Plaintiff's activities of daily
4  living as a factor in discounting Plaintiff's credibility, and for the above reasons that reliance was
5  proper.  The court thus finds that the ALJ offered specific, clear, and convincing reasons supported
6  by substantial evidence in the record for not fully crediting Plaintiff's subjective symptom
7  testimony.

**B.  RFC Determination**

  The ALJ reviewed Dr. Ratto's opinion, including Dr. Ratto's statement that Plaintiff "will have difficulty with the stress of employment." A.R. 31, 384.  The ALJ gave "substantial weight" to much but not all[4] of Dr. Ratto's assessment, finding that it was "consistent with the evidence in the file indicating minimal complaints of mental symptoms and the established residual functional capacity (above) limits the claimant to performing simple work-related tasks, in a low stress environment." A.R. 31.

  Plaintiff contends that the ALJ erred in determining Plaintiff's RFC because of the ALJ's statement about Plaintiff's ability to work "in a low stress environment." Pl.'s Mot. at 14-15.  The court notes that Plaintiff's contention is not a challenge to the ALJ's decision to give substantial weight to Dr. Ratto's opinion (which is apparently how the Commissioner interpreted Plaintiff's argument, since its response focuses on that issue, *see* D.'s Mot. at 4-5), but rather an argument that the ALJ wrongly equated Dr. Ratto's statement that Plaintiff would have "difficulty with the stress of employment" to an RFC limitation of working only in "low stress environments."  According to

---

[4] The ALJ accepted Dr. Ratto's conclusions regarding Plaintiff's functional limitations and incorporated them into her RFC.  However, the ALJ discounted results from intelligence tests administered by Dr. Ratto which showed that Plaintiff had extremely low intelligence, with an IQ of 59. *See* A.R. 28 ("[C]laimant does not have a valid verbal, performance, or full scale IQ of 59 or less.  The claimant had an IQ score of 59 during the consultative examination [by Dr. Ratto] . . ., however because the claimant has exhibited substantial mental functioning which is inconsistent with an IQ of 59, the undersigned finds that specific test to be invalid.  The claimant worked as a supervisor between the ages of 25 and 28.  He can also drive and manage his own finances.  Furthermore, the claimant's demeanor at the hearing was coherent and articulate.  Therefore, the claimant does not have a valid IQ score that would satisfy the requirements of paragraph B.").

14

Plaintiff, the term "low stress" has "no particular meaning" in the context of an RFC determination. Pl.'s Mot. at 15.

The problem with Plaintiff's argument is that it focuses on a single phrase in the ALJ's review of a single statement in the medical evidence of record without explaining how the ALJ's choice of words leads to error in her RFC determination or any other part of the five-step analysis. Dr. Ratto's evaluation concluded with a one paragraph summary of her "Diagnostic Impressions," which were as follows:

> The patient reports being able to handle money; however, some assistance would be helpful.
>
> Based on the information from today's testing, this patient is able to understand and carry out only simple instructions at the present time. Impairment in his abilities is noted, and a decline from higher functioning is likely. His memory is also impaired and adequate for only limited simple tasks. He is able to get along adequately with others; however some problems may exist. His judgment to avoid simple hazards appears adequate. Considering his current problems, he will have difficulty with the stress of employment.

A.R. 384. In the greater context of Dr. Ratto's evaluation, the statement that Plaintiff "will have difficulty with the stress of employment" is vague. It does not appear to describe any additional limitations beyond what Dr. Ratto described in the preceding sentences or in the rest of her evaluation (i.e., limitations to simple instructions and tasks, weaknesses in Plaintiff's ability to concentrate and pay attention). Nor can it be interpreted as a statement that Plaintiff is completely unable to function in a work environment, since the rest of Dr. Ratto evaluation describes Plaintiff as impaired in certain abilities but otherwise cooperative, alert, oriented, and able to comprehend the evaluation, with adequately organized thoughts, adequate intellectual functioning, adequate memory, concentration, and attention span, and adequate to fair insight and judgment. A.R. 383.

The ALJ was apparently referring to Dr. Ratto's statement about Plaintiff's "difficulty with the stress of employment" when the ALJ noted that Plaintiff's RFC included the limitations of "performing simple work-related tasks, in a low stress environment." A.R. 31. The ALJ's RFC determination does not restrict Plaintiff to "low stress environments" or even use the term "stress." Instead, it notes the following specific and definite restrictions in Plaintiff's functional abilities:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except [Plaintiff] could lift and carry ten pounds frequently and 20 pounds occasionally; could stand and/or walk for six hours during an

15

> eight-hour workday; could sit for six hours during an eight-hour workday; could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, crawl; could not climb ladders; should avoid hazards such as working around unprotected heights and heavy moving machinery; can perform simple tasks that are consistent with SVP 2 entry level work, as defined by the Dictionary of Occupational Titles ['DOT']; can make simple work related decisions; and can operate with occasional workplace changes.

A.R. 30.

This RFC is supported by substantial evidence in the record. In determining a claimant's RFC at step four of the sequential analysis, an ALJ must consider "all of the relevant medical and other evidence" in the record, and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. §§ 404.1545(a)(2)-(3), 404.1546(c); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); SSR 96-8p. The ALJ's opinion assesses the evaluations and reports of Drs. Ratto, Veletto, Lucila, Bai, and Combs, as well as relevant evidence in the medical record, much of which is also summarized by this court above. *See* A.R. 30-34. The ALJ also provided clear and convincing reasons for her decisions to give weight to certain medical opinions and not to give weight to others. *See* A.R. 30-34. Plaintiff challenges none of these reasons nor any other part of the ALJ's analysis other than the ALJ's passing reference to Plaintiff's need for a "low stress environment." But this reference, when read in context, appears to be a nontechnical description of an RFC that the ALJ lays out elsewhere in terms consistent with the requirements of the Social Security Act. *Compare* A.R. 31 ("[T]he established residual functional capacity (above) limits the claimant to performing simple work-related tasks, in a low stress environment.") *with* A.R. 30 (ALJ's RFC determination describing Plaintiff's physical and mental functional limitations without reference to "stress" level of anticipated work). A reasonable mind could find that Dr. Ratto's generic statement about Plaintiff having "difficulty with the stress of employment" is captured in the RFC limiting Plaintiff to simple tasks, simple work-related decisions, and only occasional workplace changes.

Thus, on balance, the ALJ's RFC assessment was supported by substantial evidence in the record. The ALJ therefore committed no error in determining Plaintiff's RFC or in making the statement that Plaintiff required a "low stress environment."

**C. Suitability of Occupations Identified by ALJ**

Plaintiff also contends that he cannot perform five of the six occupations specifically enumerated by the ALJ because those jobs require a "Reasoning Level" of 2 or more, which conflicts with the ALJ's determination that Plaintiff's RFC included a limitation to only "simple tasks." According to Plaintiff, his limitation to "simple tasks" means he is only able to perform work with a Reasoning Level of 1. Thus, Plaintiff contends that the ALJ erred by finding Plaintiff to be able to perform those five occupations.[5]

Each job title in the DOT is assigned a General Education Development ("GED") level which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT Appx. C, 1991 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* A Reasoning Development Level of 1 means an individual can "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* A Reasoning Development Level of 2 means the individual can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."

The problem with Plaintiff's argument is that he has cited no authority, and the court could find none in its own research, providing that an RFC limitation of performing "simple tasks" prevents a claimant from performing work with a Reasoning Developing Level of more than 1. The authority quoted by Plaintiff notes that there is no precise correlation between reasoning levels and functional limitations in an RFC assessment. *See Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1208-09 (W.D. Wash. 2012) ("There is no Ninth Circuit authority defining the precise correlation between reasoning levels and functional limitations identified in an RFC assessment. Some district court cases emphasize that DOT reasoning levels do not directly match functional limitations as defined by Social Security regulations.") (citations omitted); Pl.'s Mot. at 16-17 (quoting above excerpt of

---

[5] Plaintiff's argument appears to challenge whether the occupations identified by the ALJ and the VE meet the requirements of ALJ's RFC determination, rather than the ALJ's RFC determination itself. *See* Pl.'s Mot. at 18 (accepting the ALJ's RFC finding for purposes of this argument).

*Skeens*). Although the Ninth Circuit has not addressed the issue, many district courts have held that a limitation to simple tasks is consistent with GED Reasoning Development Level 2. *See, e.g.*, *Murray v. Colvin*, No. C-13-01182-DMR, 2014 WL 1396408, at *10 (N.D. Cal. Apr. 10, 2014) ( a person limited to "one, two step simple instruction jobs" could perform jobs requiring Reasoning Development Level of 2); *Phothikham v. Astrue*, No. CV 09-5859 JC, 2011 WL 1362079, at *4 (C.D. Cal. Apr. 11, 2011) (person limited to "simple, repetitive tasks" could perform jobs requiring Reasoning Development Level of 2, and collecting cases); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning consistent with residual functional capacity to perform "simple and routine work tasks"); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D.Cal. 2005) (plaintiff's ability to perform "simple, repetitive tasks" indicated reasoning level of two). As the court in *Meissl* noted, in the definition of Reasoning Development Level 2, the word "detailed" is immediately qualified by the word "uninvolved"; therefore, the rigorousness of the word "detailed" is "downplayed . . . by labeling [the instructions] as being 'uninvolved.'" *Id.* at 984. In that case, the court held that "[a] reasoning level of two, then, does not conflict with a limitation to simple repetitive tasks." *Id.* at 984-85.

The weight of authority, including an earlier decision by this court, provides that an RFC limiting a claimant to "simple tasks" means that the claimant is able to perform work with a Reasoning Development Level of 2. The ALJ's determination that Plaintiff could perform jobs with a Reasoning Development Level of 2 was not in error.[6]

## VII. CONCLUSION

For the foregoing reasons, the court finds that substantial evidence supported the ALJ's decision to discount Plaintiff's subjective symptom testimony. Substantial evidence also supports the ALJ's RFC determination, such that the ALJ's reference to Plaintiff working in a "low stress environment" was not in error. Finally, substantial evidence also supports the ALJ's determination

---

[6] Because the court rejects Plaintiff's argument regarding the inappropriateness of five of the six identified occupations, the court need not reach Plaintiff's final argument, i.e., that Plaintiff is incapable of performing the tasks associated with the sixth occupation. Even if Plaintiff is correct that he cannot perform the sixth occupation, that fact would be inconsequential to the ultimate nondisability determination because the ALJ identified five other occupations existing in significant numbers in the national economy that Plaintiff can perform.

1 that Plaintiff could perform certain occupations with a Reasoning Development Level of more than 1.

Defendant's motion for summary judgment is therefore **granted**, and Plaintiff's motion for summary judgment is **denied.**

Dated: March 18, 2015



_____
DONNA M. RYU
United States Magistrate Judge